# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CASE NO. 6:09-CR-20 |
| | § | |
| SHELDON SCOTT GREER | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Sentencing Memorandum and Request for Sentence at Variance with the Advisory Guideline Range (Docket No. 24). Having considered the parties' oral arguments and written submissions, and for the reasons explained below, the Request for Sentence at Variance with the Advisory Guideline Range is **GRANTED**.

## BACKGROUND

Defendant Sheldon Scott Greer ("Greer") was charged in the Indictment with possession with intent to distribute cocaine base, also known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1). On September 3, 2009, Greer pled guilty to the one count in the Indictment and entered into a plea agreement. The Pre-Sentence Report calculated Greer's base offense level as a 26, less an adjustment of 3 levels for acceptance of responsibility, which lead to a total offense level of 23. Greer also has 8 criminal history points, which places him in criminal history category IV. Thus, the guideline range for sentencing Greer is 70-87 months imprisonment. This calculation was based on the 100-to-1 crack-to-powder ratio contained in the Federal Sentencing Guidelines. A 100-to-1 crack-to-powder ratio means that a defendant possessing crack cocaine is subject to the same sentence as one possessing 100 times more powder cocaine.

1

On February 24, 2010, the Court heard Greer's Request for Sentence at Variance with the Advisory Guideline Range asking the Court to apply a 1-to-1 crack-to-powder ratio. Because the issue of departing from the advisory guideline range in crack cocaine cases is one of first impression for this Court, the Court continued the sentencing proceeding and ordered the parties to submit briefing on the issue (Docket No. 26).

Greer argues that while the Sentencing Guidelines "should be the starting point and the initial benchmark" for calculating a sentence, a Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 39 (2007). Then, Greer discusses the background and development of the Sentencing Guidelines for crack cocaine violations as articulated in *Kimbrough*. *See Kimbrough v. United States*, 552 U.S. 85, 94-98 (2007). Greer argues that *Kimbrough*, the Commission, and the Justice Department all recognize that the disparity between crack and powder cocaine is unwarranted. Next, Greer asserts that congressional action on the disparity is imminent because of the House Judiciary Committee's approval of H.R. 3245, the Fairness in Cocaine Sentencing Act of 2009, and the introduction of S.1789, the Fairness Sentencing Act of 2009, which is expected to receive bipartisan support from the Senate Judiciary Committee. Finally, Greer argues that 18 U.S.C. § 3553(a) compels elimination of the disparity in this case because he was involved with a relatively small quantity of crack cocaine, he is an African-American, he freely cooperated by confessing criminal responsibility for the offense, and weapons were not involved.

In response, the Government argues that neither Congress nor the Commission have modified the crack guidelines since Amendment 706 and that an informal poll of United States Attorney Offices in Texas indicated that courts are generally following the current guidelines. While these statements may be true, they do not substantively counter the reasons asserted by Greer for rejecting

the proposed 1-to-1 ratio. Finally, the Government cites to *United States v. Golston* where the Fifth Circuit affirmed the district court's rejection of a 1-to-1 crack-to-powder ratio. No. 08-40976, 326 F. App'x 768, 770 (5th Cir. 2009).

Greer's reply to the Government's response emphasizes the Court's authority to reject the 100-to-1 crack-to-powder ratio as given in *Kimbrough* and as exemplified by other district courts who have adopted a 1-to-1 ratio. Greer then distinguishes *Golston* by arguing that the sentence was "not based on the amount of crack cocaine involved in the offense, but rather on [defendant's] status as a career offender." *Golston*, 326 F. App'x at 770. Further, in *Golston*, the defendant had already been sentenced and was moving for a retroactive sentence reduction through application of the 1-to-1 ratio, but this case involves an application of the 1-to-1 ratio in the present sentencing before the Court. Finally, Greer notes that the Senate Judiciary Committee passed S. 1789 on March 11, 2010, which adopted a 20-to-1 ratio.

On March 30, 2010, the Court heard oral arguments on the briefing.

## ANALYSIS

As recognized by the Supreme Court in both *Kimbrough v. United States* and *Spears v. United States*, district courts have the authority to reject the 100-to-1 ratio for crack cocaine quantities. *Kimbrough v. United States*, 552 U.S. 85 (2007); *Spears v. United States*, 129 S. Ct. 840 (2009). The Fifth Circuit also recognized this authority in *United States v. Burns*, which held that a defendant, who "objected on the basis of an improper disparity between the Guidelines' treatment of powder and crack cocaine offenses, is entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced." 526 F.3d 852, 862 (5th Cir. 2008).

*Kimbrough* thoroughly discussed the background of the different treatment of crack and powder cocaine under the federal sentencing laws, the 100-to-1 ratio's legislative history, the United

States Sentencing Commission's approach to developing the sentencing guidelines, the problems with the 100-to-1 ratio as reported by the Commission, and the Commission's attempt to reduce the crack-to-powder ratio. 552 U.S. at 94-101. The Supreme Court concluded that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 110.

In *Spears*, the Supreme Court clarified that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines[,]" and "not simply based on an individualized determination that they yield an excessive sentence in a particular case." 129 S. Ct. at 843-44. The *Spears* Court stated that "*Kimbrough* . . . holds that with respect to the crack cocaine Guidelines, a categorical disagreement with and variance from the Guidelines is not suspect." *Id.* at 843. Further, the Supreme Court held that a "sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity. Put simply, the ability to reduce a mine-run defendant's sentence necessarily permits adoption of a replacement ratio." *Id.*

There are sound policy reasons for rejecting the current 100-to-1 crack-to-powder ratio in crack cocaine sentencings. In the well-reasoned opinion of *United States v. Gully*, Judge Bennett identifies the policy objections to any disparity between the sentences for crack and powder violations.[1] 619 F. Supp. 2d 633, 641-42 (N.D. Iowa 2009). First, as recognized by the Supreme

---

[1] The reasoning of *United States v. Gully* has been adopted by four other district courts. *United States v. Henderson*, 660 F. Supp. 2d 751 (E.D. La. 2009); *United States v. Lewis*, 623 F. Supp. 2d 42 (D.D.C. 2009); *United States v. Medina*, 2009 WL 2948325 (S.D. Cal. 2009); *United States v. Owens*, 2009 2485842 (W.D. Pa. 2009). The Government has not appealed the sentence imposed in any of these cases. In addition to these cases, another district court has also adopted the 1-to-1 crack-to-powder ratio, although it did not adopt the reasoning of *Gully*.

Court, the 100-to-1 ratio does "not exemplify the Commission's exercise of its characteristic institutional role." *Spears*, 129 S. Ct. at 843 (quoting *Kimbrough*, 552 U.S. at 89). Second, as presented by the Commission and discussed in *Kimbrough*, "[t]he assumptions about the relative harmfulness of crack cocaine and powder cocaine and the harms that come with trafficking in those controlled substances are not supported by recent research and data." *Id.* at 641 (citing *Kimbrough*, 552 U.S. 96). Third, the Commission also found that "the 100[-to-]l ratio is inconsistent with the goals of the 1986 Act, because it tends to punish low-level crack traffickers more severely than major traffickers in powder cocaine." *Id.* Fourth, the Commission stated that the 100-to-l ratio's "disproportionate impact on black offenders fosters disrespect for and lack of confidence in the criminal justice system." *Id.* Finally, the *Gully* court found that even the 20-to-1 ratio it previously adopted and the Supreme Court approved in *Spears* "improperly uses the quantity ratio as a proxy for various kinds of harm and violence that may or may not come with trafficking of crack cocaine in a particular case." *Gully*, 619 F. Supp. 2d at 642.

These policy reasons are further supported by the Department of Justice's recent endorsement of eliminating the disparity between crack and powder and adopting a 1-to-1 ratio in crack cocaine sentencings. On April 29, 2009, Assistant Attorney General Lanny A. Breuer testified before the Subcommitte on Crime and Drugs of the United States Senate Committee on the Judiciary and stated that the Department of Justice will "focus on formulating a new federal cocaine sentencing policy; one that completely eliminates the sentencing disparity between crack and powder cocaine but also fully accounts for violence, chronic offenders, weapon possession and other aggravating factors associated - in individual cases - with both crack and powder cocaine trafficking." *Restoring*

---

*United States v. Luck*, 2009 WL 2462192 (W.D. Va. 2009). This case is currently on appeal, but the request for appeal was filed by the defendant, not the Government.

*Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the Subcomm. on Crimes and Drugs of the S. Comm. on the Judiciary*, 111th Cong. 1 (2009) (Statement of Lanny A. Breuer, Assistant Attorney General of the Criminal Division, United States Department of Justice). For all of these reasons, this Court rejects the current 100-to-1 ratio and any ratio of disparity between crack and powder cocaine for determining the sentences of crack cocaine violators.

The Court will use a 1-to-1 ratio for this and all future crack cocaine cases, and mitigating and aggravating factors under 18 U.S.C. § 3553(a) affecting sentencing will be separately considered on a case-by-case basis.

> [W]hile an individual's characteristics, background, criminal history, propensity for violence and recidivism can, and should, play a role in determining what sentence to impose, these factors should not be used to determine the base offense guideline calculation. Instead, these factors should be considered in determining whether a variance from the guidelines should be imposed in accordance with 18 U.S.C. § 3553(a).

*Henderson v. United States*, 600 F. Supp. 2d 751, 753 (E.D. La. 2009).

The Court adopts the *Gully* methodology for determining sentencing in crack cocaine cases as it is articulated in *United States v. Lewis*. 623 F. Supp. 2d 42, 47 (D.D.C. 2009). First, the Court will calculate the sentencing guideline range under existing law using the 100-to-1 ratio and factor in appropriate adjustments contained in the Sentencing Guidelines. *Id.* Second, the Court will calculate an alternative guideline range using a 1-to-1 ratio and again factor in appropriate adjustments contained in the Sentencing Guidelines. *Id.* Third, the Court will consider on a case-by-case basis varying from the alternative guideline range depending on the Court's consideration of the 18 U.S.C. § 3553(a) factors. *Id.* As a final step, the Court will further apply any applicable statutory mandatory minimum sentence requirement. *Id.*

Using a 1-to-1 ratio to calculate Greer's sentence, Greer's base offense level is 14, less 2

points for acceptance of responsibility, resulting in a total offense level of 12. Applying a criminal history category of IV yields an alternative guideline range of 21-27 months imprisonment.

Greer has a criminal history involving controlled substances, marijuana, and other violations, but he does not have a violent criminal history, nor one that involves weapons or firearms. Thus, the Court will not exercise its discretion to vary from the alternative guideline range in this case.

## CONCLUSION

Accordingly, the Court adopts a 1-to-1 ratio for this and all future crack cocaine cases in determining the base offense level. After considering 18 U.S.C. § 3553(a)'s sentencing factors, the Court sentences Greer to 24 months imprisonment to be followed by 3 years of supervised release, finding the sentence to be sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). Having considered the parties' oral arguments and written submissions, the Request for Sentence at Variance with the Advisory Guideline Range is **GRANTED**.

**So ORDERED and SIGNED this 30th day of March, 2010.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**